# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER M. FLOWERS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. _____** |
| | ) | |
| **CAREHERE, LLC** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

### I. Introduction

This case is about a healthcare provider's retaliation and removal of a black employee who reported his employer's billing fraud of a government entity (the City of Battle Creek), while a similarly-situated white employee who turned a blind eye to the fraud remains employed and climbing the corporate ladder of Defendant CareHere, LLC ("CareHere" or "Defendant").

CareHere violated federal and state laws prohibiting discrimination and retaliation for reporting illegal activity. Plaintiff Christopher M. Flowers ("Mr. Flowers" or "Plaintiff") suffered harms and losses that warrant damages and other appropriate relief. Mr. Flowers respectfully states the following:

### II. Parties

1. Mr. Flowers was employed by CareHere from February 2015 until October 2016. He is a citizen and resident of Nashville, Tennessee (Davidson County).

1

2. CareHere, LLC is a Tennessee corporation that specializes in providing employer-sponsored healthcare. CareHere maintains and does business operations in the jurisdiction of this Court.

### III. Jurisdiction and Venue

3. Mr. Flowers seeks declaratory relief, prospective injunctive relief, equitable relief, and damages under the Tennessee Human Rights Act ("THRA"), the Civil Rights Act of 1866 Section 1981 ("Section 1981"), and the Tennessee Public Protection Act ("TPPA").

4. Mr. Flowers will file a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") related to the violations raised in this Complaint. The EEOC Charge will regard CareHere's violations of Title VII of the Civil Rights Act of 1964 ("Title VII"). Mr. Flowers expressly reserves his right to amend this Complaint to include claims for CareHere's Title VII violations upon administrative exhaustion.

5. Jurisdiction is before this Court under 28 U.S.C. §§ 1331 and 1367.

6. Venue is proper under 28 U.S.C. § 1391.

### IV. Facts

#### A. CareHere Provides Healthcare-Related Services to Several State and Local Governments

7. CareHere specializes in providing employer-sponsored healthcare services.

8. CareHere promotes that it manages approximately one hundred eighty (180) health and wellness centers across twenty-four (24) states.

9. CareHere promotes itself as a service provider to over 110,000 employees and over 225,000 members.

10. The majority of CareHere clients are municipalities, state governments, or other government entities funded by taxpayer dollars.

11. The City of Battle Creek ("Battle Creek) is a government municipality that has or had a contractual business relationship with CareHere.

12. Public records affirm that CareHere has many other clients that are government entities, including (but not limited to): Sumner County, TN; Albany, GA; Brentwood, TN; Kingsport, TN; LaVergne, TN; Charleston, SC; Myrtle Beach, SC; Marietta, GA; Mt. Juliet, TN; Valdosta, GA; Prattville, AL; Montgomery, AL; Florence, AL; and Billings, MT, to name a few.

### **B. CareHere Hires Chris Flowers and Rick Hensley as Client Relations Managers**

13. In or around February 2015, CareHere hired Chris Flowers.

14. Mr. Flowers was hired as a Client Relations Manager (CRM).

15. Mr. Flowers served as conduit between clients and CareHere operations and management. His job was to ensure positive client relationships and clinical outcomes. Mr. Flowers was charged with retaining clients through risk identification and maintaining positive relationships.

16. Mr. Flowers satisfactorily performed his job as a CRM. He was positively received by CareHere clients.

17. Mr. Flowers never received a negative performance evaluation or formal reprimand as a CareHere employee.

18. Mr. Flowers received a five-digit performance-based compensation bonus payment in 2016 (just months before his termination).

19. Mr. Flowers was the first person tasked with performing the job of Client Relations Manager. Things went so well that CareHere added another CRM in September 2015.

20. In or around September 2015, Rick Hensley was hired as a Client Relations Manager.

21. Mr. Hensley worked for the City of Battle Creek [before joining CareHere] as its Risk Manager.

22. Mr. Hensley and Mr. Flowers had the same or substantially similar job duties as CRM's. Mr. Flowers had more seniority with CareHere than Mr. Hensley.

23. Client list and job responsibilities were split between Flowers and Hensley, so as to manage CareHere's book of business in a more effective and efficient manner.

24. A substantial majority of CareHere's employees are Caucasian (White).

25. Mr. Hensley is Caucasian (White).

26. Mr. Flowers is African-American (Black).

### C. Mr. Hensley Discovers CareHere's Fraud Against the Taxpayers of Battle Creek and Explains the Illegal Activity to Mr. Flowers

27. In Early December 2015, Mr. Hensley and Mr. Flowers had an in-person meeting to discuss work-related issues. This in-person meeting is reflected in a recorded conversation.

28. Mr. Hensley told Mr. Flowers that he unearthed a serious billing fraud that CareHere and its third-party business cohorts (SHERRIL MORGAN) was actively committing against the taxpayers of Battle Creek

29. Mr. Hensley explained to Mr. Flowers that Battle Creek was being charged for bundled services that were not being performed by CareHere, its agents, or its assigns.

30. Mr. Hensley explained that CareHere was charging Battle Creek a monthly per-person fee for approximately 1000 Battle Creek employees for unperformed services and unprovided products.

31. Mr. Hensley explained the fraud in detail to Plaintiff. Mr. Hensley explained that the contract between Battle Creek and CareHere includes an itemized charge to CareHere's business procurement agent SHERRILL MORGAN for services that the parties knew were not being performed.

32. Mr. Hensley told Mr. Flowers that the taxpayers of Battle Creek were footing the bill for a windfall of compensation to CareHere and its third-party agents (SHERRILL MORGAN).

33. Mr. Hensley explained that CareHere's "fraud" against the taxpayers of Battle Creek has been ongoing for at least eighteen (18) months.

34. Mr. Hensley told Mr. Flowers that CareHere is engaging in an intentional effort to defraud the taxpayers of Battle Creek.

35. Mr. Hensley told Mr. Flowers that he discussed the fraud against the taxpayers of Battle Creek with CareHere Vice President Bernie Livers, but Mr. Livers did nothing in response to thwart or correct the fraud.

36. Mr. Hensley said Mr. Livers was told, "You've got to fix this."

37. CareHere did not "fix" the issue discussed in Paragraphs 27 through 36.

### D. Mr. Hensley Emphasizes His Belief that CareHere's Actions Are "Called FRAUD."

38. During the meeting between Mr. Hensley and Mr. Flowers, Mr. Hensley emphatically described the business relationship between CareHere and Battle Creek by saying: **"It's called FRAUD! It's called FRAUD!"**

39. Mr. Hensley said the contract between CareHere and Battle Creek was **"worse than pork."**

40. Mr. Hensley said the business dealings between CareHere and Battle Creek as some **"greasy, greasy sh-t."**

41. Mr. Hensley told Mr. Flowers, **"If the City of Battle Creek finds this out, several people are going to go to jail."**

42. Mr. Hensley told Mr. Flowers, **"If I didn't need this job, I could send those people to jail, because they are committing fraud against the government."**

### E. CareHere Employees Must Adhere to a Mandatory Duty to Report Illegal Activity to Compliance

43. CareHere employees are trained about a duty to report concerns about activities or practices that are or may be improper, illegal, or unethical.

44. The duty to report improper, illegal, or unethical activities is mandatory.

45. CareHere policy states that it will not retaliate against an employee for making a good faith report of suspected illegal activity.

46. Mr. Flowers received training about his mandatory duty to report improper, illegal, or unethical business practices.

47. Mr. Hensley never made a formal complaint to Compliance about his findings of CareHere fraud against the taxpayers of Battle Creek.

48. Mr. Hensley should have reported his concerns of fraud under Defendant's policies, procedures, and practices if he knew or suspected illegal activity or fraud.

### F. Flowers Reports Concerns About the Fraud Against the Taxpayers of Battle Creek to CareHere Corporate Compliance.

49. On December 6, 2015, Mr. Flowers reported his concerns about CareHere's fraud against the taxpayers of Battle Creek.

50. Mr. Flowers' report was in the form of an email. He delivered the email to CareHere compliance agent Bethany Moss.

51. Mr. Flowers reported: **"It was brought to my attention that there has been some illegal activity between CareHere and municipalities."**

52. Flowers further reported that he has become aware that CareHere was engaging in **"[t]he charging of government agencies, fees, and paying outside consultants for services that have not been provided."**

53. Mr. Flowers said that he was genuinely concerned that, **"[t]hese illegal issues can have a negative implication on the company on all employees connected to this organization."**

54. Mr. Flowers concluded his report by emphasizing: **"I wanted to protect the company and all employees, so I sent the complaint over to your department."**

### G. Mr. Flowers' Report is Consistent with Company Policy and Based On Reasonable Cause to Suspect Illegal Activity.

55. In the conversation identified in Paragraphs 27 through 42, Mr. Hensley: (a) explained documents and contracts demonstrating the fraud, (b) explicitly called CareHere's actions against Battle Creek "fraud", and (c) emphasized that Defendant and its third-party cohorts could go to jail because "they are committing fraud against the government."

56. At the time Mr. Flowers made his report, he knew that Mr. Hensley was aware of the terms and conditions of the contracts between CareHere and Battle Creek.

57. At the time Mr. Flowers made his report, he knew that Mr. Hensley worked as the Risk Manager for Battle Creek before coming to CareHere.

58. Under the policies described in Paragraphs 43 through 46, Mr. Flowers' report of billing fraud was in line with his duties and responsibilities as a CareHere employee who is made aware of illegal, unethical, or improper activity or practices.

59. Mr. Flowers' report was made in good faith.

7

60. Mr. Flowers had reasonable cause to suspect illegal activity based on Mr. Hensley's representations to him.

### H. CareHere Responds to Mr. Flowers' Report of Fraud with Newfound Harassment, Hostility, and Concocted Criticisms.

61. Before December 2015, Mr. Flowers had a positive relationship with CareHere, and its leaders, management, and coworkers.

62. Since December 2015, on a daily (at least weekly) basis, Mr. Flowers was targeted with harassment, hostility, and ridicule from CareHere leadership, management, and other employees [who CareHere Leadership made aware of his report].

63. After his December 2015 report, Mr. Flowers has suffered a sharp nosedive in treatment from CareHere leadership and management. The treatment of Mr. Flowers has been steadily in decline ever since. Mr. Flowers was told comments that make it clear that the nosedive in treatment was because of his complaint of suspected illegal activity.

64. Mr. Flowers was told by a knowledgeable CareHere employee that CareHere was looking for a reason to remove him several months before his termination.

65. CareHere leadership, management, and other employees began actively avoiding Mr. Flowers in the office.

66. When CareHere leadership, management, and other employees were necessitated to interact with Mr. Flowers, their communications were hostile, harassing, and condescending.

67. CareHere leadership, management, and other employees facetiously prodded Mr. Flowers about why he would make a formal complaint of illegal activity to Compliance.

68. Mr. Flowers was told that he should have kept his mouth shut about the fraud from agents of CareHere's leadership and management.

8

69. Shortly after Mr. Flowers December 2015 report, Vice-President Bernie Livers initiated a telephone call with Mr. Flowers about his report. The specifics of the call are detailed in Paragraphs 69 through 80 of this Complaint.

70. On the call, Mr. Livers admonished Mr. Flowers for making the report.

71. Mr. Livers confronted Mr. Flowers for bypassing him and reporting the matter straight to Legal and Compliance.

72. Mr. Livers expressed frustration at Mr. Flowers because he believed Plaintiff's report of illegal activity unnecessarily compelled Mr. Livers to respond to questioning from CareHere's Leadership, Legal, and Compliance.

73. Mr. Flowers did not identify Mr. Hensley as the source of the information in his report of illegal activity. Nevertheless, Mr. Livers included Rick Hensley on the call to Mr. Flowers.

74. Mr. Livers expressed in front of Mr. Hensley that Plaintiff pointed him out as the source of the information related to the alleged Battle Creek fraud.

75. Mr. Livers permitted Mr. Hensley to confront Mr. Flowers on the call.

76. Mr. Hensley told Mr. Flowers that he was "astonished" to find out that he reported the illegal activity against Battle Creek to CareHere's Compliance.

77. Mr. Hensley told Mr. Flowers, "This will be the last time I have a conversation with Chris about anything."

78. Mr. Hensley told Mr. Flowers that he could not be trusted anymore.

79. Mr. Livers' inclusion of Mr. Hensley on the call breached the confidential nature of Mr. Flowers' report to Compliance/Legal.

80. Mr. Livers' inclusion of Mr. Hensley was retaliatory and intentionally disparaging. Livers' inclusion of Mr. Hensley on the call: (a) created unnecessary conflict between Mr. Flowers

and his coworker (Rick Hensley); (b) divisively created conflict between Mr. Flowers and his peers; and (c) ended a very positive work-relationship Mr. Flowers and Mr. Hensley.

81. Mr. Livers and Mr. Hensley's call was harassing, threatening, and intimidating to Mr. Flowers.

82. CareHere agents, including Hensley and Livers, shared the fact that Mr. Flowers made a Compliance report of illegal activity to other managers, leadership, and other non-managerial employees.

83. As a result, for the remainder of Mr. Flowers employment, Mr. Flowers was treated as an outcast. CareHere became an overtly hostile work environment for Mr. Flowers.

84. Defendant's leadership and management spoke about Mr. Flowers in derogatory terms for the remainder of Mr. Flowers' employment. CareHere leadership and management referred to Mr. Flowers a "Live Wire," "different," and "not to be trusted" to other CareHere staff and agents on many occasions.

85. Mr. Flowers became the target of concocted criticisms from CareHere leadership, management, and other employees for the remainder of Mr. Flowers' employment. The concocted criticisms were targeted at Mr. Flowers on a regular and repeated basis for the remainder of Plaintiff's employment.

86. For example, during a meeting with Vice President Michele Anglea, Mr. Flowers was bombarded with negatively connoted and concocted criticisms.

87. Mr. Flowers was told, "no one likes you," "no one trust you," told that he was "different," and other similarly-disparaging comments. Mr. Flowers expressed disagreement with the concocted criticisms, and conveyed that: (1) he has suffered a nosedive in treatment since reporting the illegal activity; (2) he believes his race is a motivating factor for the decline

in formerly positive treatment he had previously been afforded from CareHere and its agents.

88. CareHere fired Mr. Flowers in October 2016.

89. The reason given for Plaintiff's termination is a pretext for discrimination and retaliation.

### I. CareHere Rewards Mr. Hensley for Not Speaking Out About the Fraud, While Mr. Flowers Was Mistreated and Fired

90. Since Mr. Flowers' report of illegal activity, Mr. Hensley has been promoted, relocated, and given a raise. Mr. Flowers suffered a nosedive in treatment and termination after his report.

91. Mr. Flowers, despite being the more-senior CRM, was not given the career advancement opportunities that CareHere afforded to Mr. Hensley despite having an interest in the same.

92. The decline in treatment, denial of promotion and advancement, and termination of Mr. Flowers was motivated by race and retaliation.

93. CareHere's asserted grounds for its actions against of Mr. Flowers is a pretext for discrimination and retaliation.

94. Defendant acted willfully and with malice or recklessly indifference to Mr. Flowers' federal and state rights.

95. As a result of CareHere's unlawful conduct, Mr. Flowers lost substantial income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional distress and mental anguish, stress and anxiety, exacerbation of medical conditions, damage to his reputation, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

## V. Causes of Action

96. Mr. Flowers adopts the above paragraphs as though fully set out herein.

### Tennessee Public Protection Act

97. Based on the conduct described in this Complaint, Defendant is liable for unlawful termination in violation of the TPPA.

98. Defendant's conduct constitutes disregard and indifference to Plaintiff's right under the TPPA.

99. Defendant's conduct harmed and caused damage to Plaintiff Flowers.

### Race Discrimination and Hostile Work Environment in Violation of Section 1981 and THRA

100. CareHere discriminated against Mr. Flowers in the terms and conditions of his employment and terminated his employment, subjected to a hostile work environment on a severe and pervasive level, and denied other benefits of employment, because of race in violation of Section 1981 and the THRA.

101. The actions taken by CareHere caused Mr. Flowers to suffer both monetary and non-monetary losses.

102. Because of CareHere's discriminatory conduct, Mr. Flowers is entitled to an award of back pay and benefits, compensatory and punitive damages, injunctive relief, attorneys' fees and costs, and all other appropriate damages, remedies, and other relief available under the THRA, Section 1981 and all federal and state statutes providing remedies for violations on this basis.

103. Plaintiff reserves the right to amend for Title VII violations upon administrative exhaustion.

## Retaliation in Violation of Title Section 1981 and the THRA

104. Mr. Flowers engaged in protected activity under Section 1981 and the THRA by complaining about race discrimination

105. In retaliation for Mr. Flowers' protected activities, he was terminated under pretext.

106. Through such retaliation, CareHere violated Mr. Flowers' rights under Section 1981 and the THRA.

107. CareHere's actions in terminating Mr. Flowers' employment, following his complaints were with reckless disregard for his right to be free from discriminatory treatment because of his opposition to discriminatory and retaliatory practices.

108. Through its actions, CareHere deprived Mr. Flowers of equal employment opportunities and benefits due him because of his willingness to oppose such discriminatory and retaliatory practices.

109. CareHere's actions against Mr. Flowers caused him to suffer both monetary and non-monetary damages.

110. Plaintiff reserves the right to amend to include Title VII claims upon administrative exhaustion.

111. Thus, Mr. Flowers is entitled to an award of back pay and benefits, compensatory and punitive damages, injunctive relief, attorneys' fees and costs, and all other appropriate damages, remedies, and other relief available under Section 1981 and the THRA.

## VI. Relief Requested

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

    A.       That this Court take jurisdiction of this matter;

    B.       That process be served;

    C.       That Plaintiff be awarded a declaratory judgment;

    D.       That this Court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of 42 U.S.C. § 1981;

    E.       That this Court enter a permanent injunction prohibiting the Defendant from engaging in unlawful employment practices in violation of Title VII;

    F.       That Plaintiff be reinstated to a full-time position with back pay and all benefits, privileges, and rights previously denied;

    G.       That the Court award Plaintiff back pay and front pay in an amount to be determined at the trial of this case for all causes of action;

    H.       That the Court award compensatory and punitive damages in an amount to be determined by the trier of fact for all causes of action;

    I.       That the Court award Plaintiff his costs in this action and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k) and other applicable laws;

    J.       That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

    K.       That the Court grant such additional equitable and monetary relief as the Court deems proper and just.

This 11th day of January 2017.

<u>s/ Brian Winfrey</u>
Brian Winfrey, TN Bar No. 02576
MORGAN & MORGAN
810 Broadway, Suite 105
Nashville, TN 37203, or
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
(615) 601-1276 or (615) 473-3243