# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER M. FLOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:17 C 43 |
| v. | ) | Hon. Marvin E. Aspen |
| | ) | |
| CAREHERE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Christopher M. Flowers filed a complaint against his former employer Defendant CareHere, LLC ("CareHere") on January 11, 2017. (Compl. (Dkt. No. 1).) Flowers claims CareHere discriminated against him based on his race and retaliated against him for reporting alleged race-based discrimination and fraudulent activity of CareHere. (*Id.* ¶¶ 97–111.) Presently before us is Defendant's motion for summary judgment. (Def.'s Mot. for Summ. J. ("Mot.") (Dkt. No. 21).) For the following reasons, we hereby deny CareHere's motion for summary judgment as to Counts I and III claiming CareHere retaliated against him in violation of the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 ("TPPA"), Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 *et seq.* ("THRA"), and 28 U.S.C. § 1981. We also grant CareHere's motion for summary judgment as to Count II, alleging race discrimination and hostile work environment, which Flowers abandoned. (*See* Resp. (Dkt. No. 30–1) at 1 n.1.)

In addition, we strike the pretrial conference currently scheduled for September 5, 2018 and the trial date set for September 25, 2018. (Dkt. Nos. 16, 34.) The parties shall appear for a pretrial conference on October 11, 2018 at 8:30 a.m., at which time a new trial date will be

selected. The previously ordered deadlines regarding the submission of pretrial materials remain in effect. (Dkt. No. 34.)

## BACKGROUND

Unless otherwise noted, the facts described herein are undisputed and come from CareHere's Local Rule 56.01(b) statement of facts. (*See* Def.'s Concise Statement of Undisputed Material Facts ("SOF") (Dkt. No. 23); Resp. to SOF (Dkt. No. 27).) However, the information provided in the statement of facts is scant, as CareHere submitted less than twenty facts and Flowers did not submit a statement of additional facts as allowed by Local Rule 56.01(c).[1] We accordingly supplement the facts presented in this section with information contained in parties' briefs and exhibits where necessary.

CareHere hired Flowers, an African American man, in February 2015 as a Customer Relations Manager ("CRM"), a newly-created position.[2] (SOF ¶¶ 2–3.) The CRM role was part of CareHere's sales department and involved sales and operations responsibilities: the CRM worked generally to develop client relationships, "upsell services to existing clients," and retain customers. (Mem. in Support of Mot. for Summ. J. ("Mem.") (Dkt. No. 24) at 2 (citing Anglea

---

[1] The failure to file a statement of additional facts is proper only if the non-moving party agrees there are no material facts "as to which [he] contends there exists a genuine issue to be tried" beyond the facts set forth in the movant's statement of facts. LR 56.01(c). In this regard, Flowers clearly violated the local rules, as he relies on several additional facts (largely citing his declaration) in his response that are nowhere raised in CareHere's statement of facts. (*See* Resp. (Dkt. No. 25) at 2–9.) *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . . Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact.") (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

[2] In its answer, CareHere avers it is a company that "partners with its clients to provide work-site access to primary and preventative healthcare" across the United States, and that the majority of its clients are government entities, including the city of Battle Creek, Michigan. (Answer (Dkt. No. 6) ¶¶ 2, 8, 10–11.)

Decl. (Dkt. No. 22–9) ¶ 6, Livers Decl. (Dkt. No. 22–4) ¶ 6).) Flowers contends he met the expectations of the CRM position. For example, he received a bonus of $10,000.00 on May 6, 2016 based on his ability to renew current clients. (Dkt. No. 26–1 at PageID #:281–82.) In Flowers' performance review dated October 12, 2015 conducted by Bernard Livers, Vice President of Sales, Flowers received the overall performance rating of "meets expectations." (*Id.* at PageID #:277–80.)

Rick Hensley, a white man, was hired as a second CRM in August 2015. (Resp. at 4.) Flowers asserts in his declaration that Hensley, who formerly worked for the City of Battle Creek, Michigan, informed Flowers in December 2015 that CareHere was committing fraud against Battle Creek by billing the city for unperformed services. (Flowers Decl. (Dkt. No. 26) ¶¶ 23–25.)[3] On December 6, 2015, Flowers sent an email to Bethany Moss, CareHere's Quality Assurance Compliance Administrator, stating, "[i]t was brought to my attention that there has been some illegal activity occurring between CareHere and municipalities." (SOF ¶ 4; Complaint Email (Dkt. No. 26–1 at PageID #: 274–75).) Flowers copied Livers on this email. (Complaint Email). Flowers states in his declaration that Livers called him shortly thereafter and "confronted" him about his compliance complaint. (Flowers Decl. ¶ 33.)[4] Flowers claims Livers was angry Flowers "bypass[ed] him and report[ed] the illegal activity to Compliance," and that Hensley joined the call and "confronted[ed] [Flowers] in a hostile manner." (*Id.*)

Nathaniel Dallas, CareHere's Director of Legal Services and Compliance, investigated Flowers complaint. (SOF ¶ 5.) On January 19, 2016, Dallas informed Flowers via email that his

---

[3] This discussion between Flowers and Hensley was allegedly recorded and produced to CareHere during discovery but the recording is nowhere in the record. (Flowers Decl. ¶ 25.)

[4] Flowers also claims he recorded this call, although the transcript is again not in the record. (*Id.* ¶ 33.)

3

review "did not uncover any illegal activities nor did we find any anomalies in broker payments," and stated that the investigation was closed. (*Id.* ¶ 6.)

Flowers claims his treatment at work declined after his compliance complaint in December 2015. Flowers states that before December 2015, he had positive "personal and professional relationships" with his supervisors and coworkers, and had "cordial[] interact[ions]" with others at work. (Flowers Decl. ¶ 16.) However, in early 2016, Flowers describes numerous instances when Michelle Anglea, Senior Vice President and Chief Clinical Officer, along with Livers and Hensley gave him the "cold shoulder" at work and generally treated him "far worse," including by making statements that others had lost trust in Flowers. (Flowers Decl. ¶¶ 34–40, 47.)

On April 5, 2016, Mary Johnson, who was then CareHere's Corporate Recruiter, sent an internal notification to CareHere employees that the position of Senior Director of Operations was available. (SOF ¶ 7.) Flowers was a recipient listed on the distribution list for Johnson's email. (*Id.* ¶ 8.) The parties do not contest that Flowers did not apply for the Senior Director of Operations position. (*Id.* ¶ 10.) However, the parties disagree whether Flowers ever "expressed interest" in the position. (Resp. to SOF ¶ 9.)[5] Hensley was ultimately hired for the position. (SOF ¶¶ 11–12.)[6]

---

[5] CareHere states Flowers never expressed interest to Johnson, Anglea, or Jeremy Tolley, CareHere's Chief People Officer. (SOF ¶ 9; Tolley Decl. (Dkt. No. 22–1) ¶ 3.) Flowers, however, claims he "inquired about the position" with Bernard Livers, Vice President of Sales, and expressed interest in the job. (Resp. to SOF ¶ 9; Mem. at 2 n.2; Resp. at 2.) Flowers says Livers "dissuaded [him] from applying because he said they had an idea about who was going to get it," namely, that "Rick [Hensley] is going to get the job." (*Id.*)

[6] While CareHere claims Hensley "expressed interest" in the position, Flowers argues CareHere produced no evidence demonstrating Hensley expressed interest or applied to the position. (Resp. to SOF ¶ 11.)

In early September 2016, after Anglea "aggressively confronted" Flowers "at the workplace," Flowers told Anglea, "I believe that the treatment I've been getting is hostile" and "I believe I have been singled-out because of my race and my report to Compliance." (Flowers Decl. ¶ 47.) Later the same day, Flowers also told Livers that he believed he was being "singled-out because of [his] race and [his] report to Compliance." (*Id.* ¶ 48.)

On September 16, 2016, Livers and Tolley apparently had a "conversation about organization changes" to the sales department, which Livers led. (Reorganization Charts (Dkt. No. 22–7 at Page ID#:131–32); Dkt. No. 22–7 at Page ID#:130 (presenting email).) On September 22, 2016, Tolley sent Livers charts of a proposed organizational chart that, among other changes, removed the CRM position. (*Id.*)[7]

On October 27, 2016, based on this reorganization, CareHere informed Flowers he "was being let go" because the CRM position was being "eliminated." (Flowers Decl. ¶ 49.) Flowers' last day was November 4, 2016. (SOF ¶ 13.) The parties agree that the CRM position was eliminated based on a decision made by Livers, Anglea, and Tolley. (Resp. to SOF ¶¶ 15–16.) However, they disagree whether CareHere's decision to eliminate the CRM position was the cause of Flowers' termination. (*Id.*) CareHere states the CRM position was eliminated "because it did not deliver the type of results that were expected from it." (SOF ¶ 16; *see also* Personnel Action Form ("PAF") (Dkt. No. 30–5) (describing the termination code to be "Reduction in Force").) Specifically, Livers, who was involved in the decision to eliminate the CRM position, stated, "the dollars paid for the CRM position were greater than the dollars which it was bringing to CareHere." (Tolley Decl. (Dkt. No. 22–1) ¶ 6.)

---

[7] Both parties submitted organizational charts demonstrating the reorganization in CareHere's sales department in September 2016. (Dkt. Nos. 22–7, 30–3.) In both filings, the employee names and positions within the chart are indecipherable.

Flowers, in contrast, argues that even if the CRM position was eliminated, this elimination was insufficient to terminate Flowers and demonstrates "retaliatory animus" and "pretext for discrimination." (Resp. to SOF ¶ 15.) Specifically, Flowers lists six non-African American sales employees whose positions were eliminated at the same time due to the reorganization of the sales department, but who remained employed in different sales-related positions after the reorganization. (*Id.*; *see also* Reorganization Charts.) Flowers declares that unlike the non-African American employees who did not complain about discrimination or fraud, he was never given the opportunity to continue in sales at CareHere in a different role. (Flowers Decl. ¶ 52.) Flowers also states that when he asked Livers if his termination had to do with his fraud complaints, Livers indicated it would have been better if he had "kept [his] mouth shut" instead of "being so outspoken," and that "[i]n the future you might not want to ruffle so many feathers." (*Id.* ¶ 49.)

Finally, the parties dispute whether anyone at CareHere made race-related comments to or about Flowers. The parties agree that Livers and Anglea did not make any such comments to or about Flowers. (SOF ¶¶ 17–18.) CareHere also asserts Livers and Anglea did not know of any other employee of CareHere doing so either. (*Id.* ¶¶ 17–18.) Flowers disputes whether Livers and Anglea knew of any complaints about racial comments being made to or about him, and declares that in September 2016 he told Livers[8] and Anglea[9] that he felt he was being "singled-out because of my race and report to Compliance." (Flowers Decl. ¶¶ 47–48.)

---

[8] Livers denies in his declaration that Flowers ever reported to him any race-related comments being made to or about him, or that he was subject to "race based harassment." (Livers Decl. ¶¶ 11–12.)

[9] Anglea similarly denies in her declaration that she ever made racial comments to Flowers or about him, stated that she was not aware of any CareHere employees making any such comments, and stated that Flowers never reported to her racially related comments being made to or about him. (Anglea Decl. (Dkt. No. 22–9) ¶¶ 7–8.)

On January 1, 2017, Flowers filed a complaint against CareHere alleging claims for unlawful termination in violation of the TPPA (Count I); race discrimination and hostile work environment in violation of § 1981 and the THRA (Count II); and retaliation for complaining about race discrimination in violation of § 1981 and the THRA (Count III). (Compl. ¶¶ 97–111.)

CareHere filed a motion for summary judgment on all of Flowers' claims. (Mot. at 1.) CareHere argues that there are no disputed issues of material fact that Flowers was terminated only because his CRM position was eliminated, not because of "whistleblowing," "his race," or "in retaliation for any alleged protected activity in which Plaintiff claims he was engaged." (Mem. at 1, 4.)

## LEGAL STANDARD

Based on Federal Rule of Civil Procedure 56(a), the court will grant a motion for summary judgment if "there are no genuine issues of material fact for trial" and the moving party is entitled to judgment as a matter of law. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016); *Pigott v. Battle Ground Acad.*, 909 F. Supp. 2d 949, 956 (M.D. Tenn. 2012). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "Where the movant has satisfied this burden, the nonmoving party cannot 'rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 446 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)). "'The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient,' and the party's proof must be more than 'merely colorable.'" *Hawkins v. Ctr. for Spinal Surgery*, 34 F. Supp. 3d 822, 833 (M.D. Tenn. 2014) (citing *Anderson*, 477 U.S. at 252, 264, 106 S. Ct. at 2511, 2518). "Conclusory allegations and subjective perceptions or assessments do not constitute evidence 'sufficient to stave off summary

7

judgment.'" *Cook v. McHugh*, 193 F. Supp. 3d 866, 871 (M.D. Tenn. 2016) (citing *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001)). When considering a motion for summary judgment, we view the facts and make reasonable inferences in the light most favorable to the nonmoving party. *Ferrari*, 826 F.3d at 891.

## ANALYSIS

As a preliminary matter, in his response to CareHere's motion, Flowers has abandoned his race discrimination and hostile work environment claim pursuant to the THRA and § 1981 (Count II). At the outset of his brief, Flowers states: "With page limits in mind, and in an effort to condense this Court's review and the trial presentation, this memorandum will only address the retaliation-based claims under the TPPA, THRA, and Section 1981 and present those claims to the jury." (Resp. at 1 n.1.) Based on this statement, it appears Flowers has admitted that he cannot prevail on Count II. Furthermore, while Flowers goes on to state that "Defendant's motion . . . is insufficient to secure summary judgment on any claims," nowhere in his response brief does Flowers respond to CareHere's arguments about his discrimination and hostile work environment claims. (*See* Mem. at 14–18.) We decline to consider the merits of Flowers' abandoned claims, and grant CareHere summary judgment on Count II. *Campbell v. Hines*, No. 12–4329, 2013 WL 7899224, at *4 (6th Cir. Aug. 8, 2013) ("In light of [plaintiff]'s failure to address the defendants' arguments in his response to the summary judgment motion, the district court properly declined to consider the merits of the claims."); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (finding the district court properly granted summary judgment to defendant as plaintiff "failed to address" the claim in his briefing on the motion); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (affirming district court finding the plaintiff had abandoned claims by failing to properly respond to defendant's arguments); *Conner v. Hardee's Food Sys., Inc.*, 65 F. App'x 19, 24–25 (6th Cir. 2003)

("Because Plaintiffs failed to brief the issue before the district court . . . we find that Plaintiffs abandoned their . . . claim.").

Remaining are two retaliation claims: unlawful termination for complaints about unlawful activity in violation of the TPPA (Count I) and retaliation for complaining about race discrimination in violation of the THRA and § 1981 (Count III).

## I. RETALIATION PURSUANT TO THE TPPA (COUNT I)

Flowers claims CareHere terminated him in violation of the TPPA, arguing CareHere discharged him in retaliation for his December 6, 2016 internal reporting of CareHere's alleged fraudulent billing of its client, the City of Battle Creek. (Resp. at 4–5, 10.) CareHere argues it should be granted summary judgment on this claim because Flowers has failed to "establish that his employment was terminated solely because of his complaint," and that Flowers cannot establish that the proffered reason for his discharge was pretextual. (Mem. at 8–9 (emphasis removed).)

The TPPA, Tennessee's whistleblower statute, provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities," Tenn. Code Ann. § 50-1-304(b), and creates a private cause of action for any employee terminated in violation of subsection (b), *id.* § 51-1-304(c)(1). "Illegal activities" include "activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." *Id.* § 50-1-304(a)(3).

The TPPA provides "statutory protection to employees whose actions served to deter, expose, and stop organizational wrongdoing," and "essentially codified the common-law cause of action for retaliatory discharge . . . ." *Williams v. City of Burns*, 465 S.W.3d 96, 109–10 (Tenn. 2015). The TPPA requires us to apply a burden-shifting analysis similar to the *McDonnell Douglas* analysis for proving a retaliation claim. *Id.* at 112. First, the plaintiff has

9

the burden of establishing a prima facie case of retaliatory discharge. Tenn. Code Ann. § 50-1-304(f). If the plaintiff establishes a prima facie case for retaliatory discharge, the defendant must produce evidence of at least one legitimate, non-retaliatory reason for the employee's termination, and the burden shifts back to the plaintiff to demonstrate that the reason given by the defendant was "not the true reason for the plaintiff's discharge" and was only pretext for unlawful retaliation. *Id.*

### A. Plaintiff's Prima Facie Case

We first consider whether Flowers met his preliminary burden of presenting evidence of a prima facie TPPA claim. "The burden to establish a prima facie case is not onerous." *Williams*, 465 S.W.3d at 113. In order to set forth a prima facie TPPA claim, a plaintiff must establish: (1) that he engaged in conduct protected by the TPAA, (2) that the defendant knew of the protected conduct, (3) that the defendant then discharged plaintiff, and (4) that defendant terminated plaintiff solely because of the plaintiff's protected conduct. *Id.* CareHere admits Flowers met the first three elements: Flowers spoke out about illegal activity protected by the TPAA on December 6, 2015 when he complained to Moss by email about possible fraud, CareHere knew of the complaint, and Flowers was discharged on November 4, 2016. (Mem. at 6–9; SOF ¶¶ 4, 13.) CareHere insists, however, that Flowers has failed to establish that his complaints were the sole cause of his termination. (*Id.*)

To sufficiently demonstrate causation under the TPPA and survive summary judgment, the plaintiff must present "direct evidence or compelling circumstantial evidence" that he was dismissed solely because of whistleblowing activity. *McCain v. Airport Honda*, No. 03A01-9603-CV-00099, 1996 WL 557794, at *1 (Tenn. Ct. App. Oct. 2, 1996). Significantly, this case presents a rare circumstance in which an employee-plaintiff presents direct evidence of an employer's retaliatory motive. Direct evidence "of retaliatory motive" is "proof of motive on its face, without the need for inference." *Williams*, 465 S.W.3d 96 at 121.

10

Such evidence is "usually impossible to obtain in the employment law-context when the fact in issue is the employer's motivation for a particular employment decision." *Id.* (internal citation omitted); *see U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S. Ct. 1478, 1482 (1983) ("There will seldom be 'eyewitness' testimony as to the employer's mental processes."). Flowers declares that at his termination meeting, just days before his termination was finalized, Flowers directly asked Livers, his supervisor, whether he was being terminated in part because of his internal complaint. (Flowers Decl. ¶ 49.) Flowers attests Livers responded, "Look Chris, trust is really important in this industry. In hindsight, you probably 'kept your mouth shut' rather than be so outspoken. In the future you might not want to ruffle so many feathers." (*Id*.) Similarly, Flowers points to numerous occasions where supervisors expressed discontent with his complaint. Specifically, on December 9, 2015, three days after emailing Moss his complaint, Livers called Flowers and "scolded" him for "going over his head" and "involving Legal and Compliance." (*Id.* ¶ 32.) A few days later, Flowers declares that Livers initiated a second confrontational call, where Livers "criticized [Flowers] for bypassing him and reporting the illegal activity to Compliance." (*Id.* ¶ 33.) Flowers also asserts Livers asked him in March 2016, "I just don't understand. Why in the [w]orld wouldn't you come to me instead of making a big deal about Battle Creek?" (*Id.* ¶ 37.)

Based on this direct evidence of retaliatory motive for reporting alleged fraud, Flowers has established that CareHere terminated Flowers because he engaged in protected conduct and has created an issue of fact as to TPPA retaliation that precludes summary judgment. *See Jones v. City of Union City,* No. W2013 02358 COAR3CV, 2015 WL 9257815, at *14 (Tenn. Ct. App. Dec. 17, 2015) ("Direct evidence may include an acknowledgment by the employer of discriminatory intent."); *see also Williams*, 465 S.W.3d at 121 (finding supervisor's testimony that he "at least in part" discharged plaintiff for going around "the chain of command" and for refusing to participate in illegal activity was direct evidence of retaliation).

Flowers also raised additional circumstantial evidence supporting a conclusion his complaints were the sole cause of his termination, including the significant change of treatment Flowers experienced from Livers, Anglea, and Hensley after Flowers made his complaint to compliance in December 2015. (*See* Flowers Decl. ¶¶ 16, 39–40 (explaining that after December 2015, Livers, Anglea, and Hensley stopped discussing personal matters or "non-essential work issues" after December 2015, and that these individuals no longer invited him to lunch or any other "fellowship opportunities").) "[A] pattern of workplace antagonism following a complaint" and increased scrutiny after protected activity provides circumstantial evidence of causation in the TPPA context. *Williams*, 465 S.W.3d at 122 (citing *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 29 (Tenn. 2011)).

CareHere argues Flowers admitted whistleblowing was not the sole reason for his termination in his declaration. (Reply at 2.) CareHere contends Flowers asserted other reasons in stating, "I knew my end of employment was because of my complaints about race discrimination, illegality by CareHere against Battle Creek, and retaliation after reporting the company's illegal activity . . . ." (Flowers Decl. ¶ 49.) We disagree that this is an admission that CareHere did not terminate Flowers solely for his internal whistleblowing. Instead, Flowers is merely "proceeding on alternative theories," and this statement is not fatal to his prima facie TPPA claim. *See Hajizadeh v. Vanderbilt Univ.*, 879 F. Supp. 2d 910, 925–26 (M.D. Tenn. 2012) (rejecting defendant's argument that plaintiff's proceeding under multiple legal theories for unlawful termination, including retaliation, national origin discrimination, and age discrimination, does not mean plaintiff admitted discrimination was not the sole cause of her termination).

### B. Defendant's Proffered Non-Retaliatory Reason for Termination

Once Flowers asserts a prima facie case, the burden shifts to CareHere to produce a legitimate, non-retaliatory reason for his termination. At this stage, the defendant need only

suggest at least one non-retaliatory reason for termination, which in effect demonstrates retaliation was not the *sole* cause of the termination. *Williams*, 465 S.W.3d at 115.

CareHere argues Flowers was terminated "because the CRM position held by him was eliminated in the fall of 2016," explaining the CRM position "did not deliver the type of results that were expected from it." (Mem. at 11.) Specifically, CareHere management concluded, "the dollars paid for the CRM position were greater than the dollars which it was bringing to CareHere" in the form of deeper client relationships, upselling clients services, and client retention. (*Id.* (citing Tolley Decl. ¶ 6).)[10] Based on this articulation of a non-discriminatory reason, CareHere has adequately met its burden of producing a non-retaliatory reason for Flowers' termination and rebutted the presumption that CareHere terminated Flowers only out of retaliation. *Williams*, 465 S.W.3d at 115, 118 ("[T]he employer's proffered non-retaliatory reason for discharging the employee need not be a sound one; it need only be a reason other than retaliation."). The burden thus shifts back to Flowers to show the proffered explanation was merely pretext. Tenn. Code Ann. § 50-1-304(f).

### C. Pretext

Flowers argues CareHere's stated non-discriminatory explanation for his termination is pretextual. (Resp. at 16–19.) "Pretext is typically shown in one of three ways: (1) by establishing that the employer's proffered reasons have no basis in fact, (2) by establishing that the proffered reasons did not actually motivate the discharge, or (3) by establishing that they were insufficient to motivate the discharge." *Williams*, 465 S.W.3d at 119. Because "an employer's true motivations are particularly difficult to ascertain . . . caution should be exercised in granting summary judgment once a plaintiff has established a prima facie inference of

---

[10] CareHere states that Flowers focused on "client renewals," but did not meet CareHere's expectations for the position in terms of developing "deeper" relationships with clients. (Reply at 6.)

retaliation through direct or circumstantial evidence." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004).

We find that the direct evidence relied upon to establish causation—Livers' statements that Flowers was being terminated because he had failed to "keep his mouth shut"—establish that there is a material issue of fact as to whether the alleged unprofitability of the CRM position was the actual reason for Flowers' termination. Direct evidence of an employer's retaliatory intent can sufficiently create a fact issue as to pretext. *See Wooley v. Madison Cty.*, 209 F. Supp. 2d 836, 848 (W.D. Tenn. 2002) (finding issue as to pretext on TPPA claim when supervisor "threatened [plaintiff] that he would terminate the employee who had complained about his pay practices once he was certain of that individual's identity"). Viewing the evidence in the light most favorable to Flowers, we find he has established a genuine issue of material fact as to whether CareHere's stated business-related reason for terminating him is pretextual, and we deny CareHere's motion for summary judgment on the TPPA claim (Count I).

## II. RETALIATION PURSUANT TO THE THRA AND § 1981 (COUNT III)

We turn now to Flowers' retaliation claim related to his termination following alleged complaints about race-based discrimination pursuant to the THRA and § 1981 (Count III). Flowers alternatively claims CareHere terminated him in retaliation for complaints to Anglea and Rivers about race discrimination in September 2016. (Compl. ¶¶ 104–105; Resp. at 14.)

The THRA and § 1981 make it unlawful for an employer to retaliate against an employee for opposing racial discrimination. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451, 128 S. Ct. 1951, 1958 (2008) (discussing § 1981); *Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 434 (Tenn. Ct. App. 2015) ("The THRA prohibits retaliation against employees who oppose discriminatory practices in the workplace."). Claims of retaliation brought under Section 1981 and the THRA are "governed by the same burden-shifting standards as . . . claims under Title VII." *Wade*, 259 F.3d at 464. At summary judgment, if a plaintiff submits no direct

evidence as is the case for Flowers' race-based retaliation claim, the plaintiff first has the burden of establishing a prima facie case of retaliation under Title VII. *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004). If a plaintiff establishes a prima facie case of retaliation by a preponderance of evidence, the burden then shifts to defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015). If the defendant provides such a reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that Defendant's reason for its actions is pretextual. *Id.* at 677.

### A. Plaintiff's Prima Facie Case

In the Sixth Circuit, a prima facie retaliation claim under the THRA and § 1981 requires a plaintiff to demonstrate at summary judgment that (1) he engaged in protected activity, (2) the defendant-employer knew he engaged in this protected activity, (3) the defendant-employer then took an adverse employment action against plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *Smith*, 378 F.3d at 570. CareHere only challenges the first two elements—that Flowers engaged in protected activity and that the activity was known to CareHere. (Mem. at 19–20.) We consider these arguments in turn.

CareHere claims that Plaintiff did not report to Livers, Anglea, or Tolley that any CareHere employee made race-related comments to him, which Flowers disputes in regard to Livers and Anglea. (Pl.'s Resp. to SOF ¶¶ 17–19; *see* Livers Decl. ¶ 12 (denying Flowers reported to him that any CareHere employee made "racially related comments either to him or

15

about him"); Anglea Decl. ¶¶ 7–8 (same).)[11] Flowers declares that after Anglea "aggressively confronted [him] at the workplace" in early September 2016, Flowers "pulled [her] aside and said, 'Things have not been the same between us in a long while. I believe that the treatment I've been getting is hostile. And I believe I have been singled-out because of my race and my report to Compliance.'" (Flowers Decl. ¶ 47.) Flowers' declaration also states that later the same day, he told Livers that he believed he was being "singled-out because of my race." (*Id.* ¶ 48.) Based on Flowers' declaration, he has sufficiently created a genuine issue of material fact as to the first element, as reporting race discrimination to his employer is a protected activity. *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) ("[A] demand that a supervisor cease his/her harassing conduct constitutes protected activity . . . ."); *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, No. 3:14 C 02325, 2016 WL 2927983, at *8 (M.D. Tenn. May 19, 2016) (explaining that a complaint about "racially-oriented language" made during an informal conversation constituted protected activity). Furthermore, viewing the evidence in the light most favorable to Flowers, we find he created an issue of fact as to the second element because he directly informed two CareHere managers that he believed he was being discriminated against based on his race. *Herrera v. Churchill McGee, LLC*, 545 F. App'x 499, 501 (6th Cir. 2013) (explaining that plaintiff's affidavit, deposition testimony, and interrogatory responses that he had complained to two owners of employer about racial discrimination were sufficient to establish employer knowledge of protected behavior).

---

[11] CareHere argues that a number of Flowers' statements in opposition to the motion for summary judgment are inadmissible hearsay, and thus cannot be considered for the purposes of the pending motion pursuant to Rule 56(c)(2). (Reply at 7–8 (citing Flowers Decl. ¶¶ 35, 41, 46).) We do not consider that evidence for the purposes of our analysis.

16

Flowers has also met the remaining elements. CareHere does not dispute that Flowers' termination constitutes an adverse employment action. Flowers has further set forth sufficient evidence of causation to establish a prima facie claim based on the temporal proximity between his complaints about race discrimination in early September 2016 and his termination effective November 4, 2016. (SOF ¶ 13; Flowers Decl. ¶¶ 47–48.) *See Herrera*, 545 F. App'x at 501 ("[T]emporal proximity alone may satisfy the causal prong of a plaintiff's prima facie retaliation case."); *Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) (finding two-month window sufficient to meet causation requirement of prima facie case); *Singfield*, 389 F.3d at 563 ("[T]he temporal proximity of these events [three months] is significant enough to constitute sufficient evidence of a causal connection for the purpose of . . . a prima facie case.").

### B. Defendant's Proffered Non-Retaliatory Reason for Termination

The burden then shifts to Levy to articulate at least one non-retaliatory reason for Bruce's termination. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000) ("This burden is one of production, not persuasion; it can involve no credibility assessment.") (internal citation omitted). As discussed above, CareHere offers a non-retaliatory reason for Flower's termination: that CareHere eliminated the CRM position because it "did not deliver the type of results that were expected from it." (Mem. at 11.) With this explanation, the burden shifts back to Flowers to demonstrate that the proffered explanation is merely pretextual. *Singfield*, 389 F.3d at 564.

### C. Pretext

We finally must determine whether CareHere's explanation that Flowers was terminated because the CRM position was eliminated due to profitability concerns was mere pretext for retaliation for his complaints about race discrimination. As discussed above, "[t]o prove pretext, a plaintiff must show that his employer's proffered reason was false and that retaliation was the real reason for the adverse action." *Herrera*, 545 F. App'x at 503. A plaintiff can prove a stated

17

reason is false by demonstrating it (1) had no basis in fact, (2) did not actually motivate the defendant's action, or (3) was insufficient to motivate the action. *Id.*

Flowers points to various facts that create a material issue as to pretext. Flowers' most compelling evidence of pretext is the temporal proximity between his complaint about racial discrimination and his termination. (Resp. at 13–14.) Flowers complained to Anglea and Livers in early September 2016 that he was being "treat[ed]" in a "hostile" manner and "singled-out because of [his] race," and he was informed of his termination on October 27, 2016, less than two months later. (Flowers Decl. ¶¶ 47–49.) *See also Adamov v. U.S. Bank Nat'l Ass'n*, 681 F. App'x 473, 481 (6th Cir. 2017) ("[T]hree weeks . . . between complaints of discrimination and termination seems suspicious and supports an inference of retaliation.") (internal citation omitted); *Asmo v. Keane, Inc.,* 471 F.3d 588, 598 (6th Cir. 2006) (finding two-month period between announcement of pregnancy and termination to be evidence of pretext sufficient to preclude summary judgment). Furthermore, Livers and Tolley discussed reorganization of the sales department that eliminated Flowers' position on September 16, 2016, mere days after Flowers complained of racial discrimination. (Dkt. No. 22–7 at PageID #:130 (email from Tolley to Livers proposing sales department reorganization "[p]ursuant to [their] 9/16 conversation").) While "temporal proximity cannot be the sole basis for finding pretext, . . . suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (citing *Donald v. Sybra, Inc*., 667 F.3d 757, 763 (6th Cir. 2012); *Bell v. Prefix, Inc*., 321 Fed. App'x 423, 431 (6th Cir. 2009)).

Flowers presents additional evidence that creates a material issue as to pretext. For example, Flowers demonstrated that even if the CRM position itself was not ultimately profitable as CareHere alleges, Flowers adequately performed his duties as a CRM during his employment. A review completed by Livers on October 12, 2015 stated that during the previous year, Flowers

18

"me[t] expectations." (Dkt. No. 29–7.) Furthermore, in May 2016, Flowers received a bonus approved by CareHere's President for satisfactorily renewing clients. (Dkt. No. 29–8 at 2.) *Henry v. Abbott Labs.*, 651 F. App'x 494, 502 (6th Cir. 2016) (finding recent positive reviews of an employee's performance to be evidence of pretext in failure-to-promote claim). Furthermore, Anglea stated that when she interviewed Flowers in 2015, she was "impressed by Chris and perceived that he could be an asset to CareHere." (Anglea Decl. ¶ 4.)

Despite his apparent qualifications and adequate performance, when CareHere reorganized the sales division led by Livers in September 2016 and eliminated the CRM position, Flowers was terminated without CareHere offering him another position at CareHere. (Flowers Decl. ¶ 52; Dkt. No. 22–7 at PageID #:130; Reorganization Charts.) Flowers identified six white employees in the sales department who did not complain about racial discrimination to CareHere, and who occupied eliminated "Sales Rep 1" and "Sales Administrator" positions that "were retained as employees with different job titles." (Resp. at 8, n.6.) Essentially, during the September 2016 sales department reorganization CareHere terminated only Flowers, instead of moving him to another sales position as it did for other non-African American employees who had not complained about discrimination. Based on this discrepancy in treatment, we find sufficient evidence that CareHere did not actually terminate Flowers merely because of the CRM position's unprofitability, especially considering CareHere formulated the organizational changes only weeks after Flowers complained about racial discrimination.

For these reasons, Flowers has pointed to sufficient evidence from which a jury could find that CareHere's proffered reason for Flowers' termination was pretext. We accordingly deny summary judgment on Flowers' THRA and § 1981 claim for retaliation based on his complaints about race discrimination (Count III).

## CONCLUSION

For the above reasons, we grant CareHere's motion for summary judgment as to Count II and deny the motion as to Counts I and III. We also strike the pretrial conference currently scheduled for September 5, 2018 and the trial date set for September 25, 2018. (Dkt. Nos. 16, 34.) The parties shall appear for a pretrial conference on October 11, 2018 at 8:30 a.m., at which time a new trial date will be selected. The previously ordered deadlines regarding the submission of pretrial materials remain in effect. (Dkt. No. 34.) It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: August 28, 2018
       Chicago, Illinois